IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| ORLANDO CAIN FEBLES,<br><br>              Petitioner,<br><br>vs.<br><br><br>P. RIDER, et. al.,<br><br>              Respondents.<br>_____ | No. CV 07-728-PHX-SRB (CRP)<br><br>REPORT AND<br>RECOMMENDATION |

Orlando Febles ("Petitioner"), presently an inmate at the Arizona State Prison Complex in Douglas, filed this Petition for Writ of Habeas Corpus ("Habeas Petition") on April 9, 2007. (Doc 1). Petitioner raises one ground for relief in which he presents five claims. He argues (1) his right to speedy trial was denied; (2) his attorneys were ineffective because they spent too much time contesting fees; (3) his trial and appeal counsel were ineffective, (4) his rights were violated in light of *Apprendi v. New Jersey* and *Blakey v. Washington*; and (5) the trial judge aggravated his sentence for no apparent reason. (Doc 1).

Respondents oppose the Habeas Petition, arguing it is an abuse of writ because it is a second or successive habeas petition challenging the same judgments and sentences analyzed in Petitioner's first Habeas Petition. (Doc 16); (*See Febles v. Rider, et. al*, cv-06-1414-SRB-CRP). In his Reply, Petitioner contends this Habeas Petition addresses Counts 1 and 2 of his convictions which he argues are separate from Count 4, the focus of his first Habeas Petition. (Doc 17).

**I.  FACTUAL AND PROCEDURAL HISTORY**

**A. DIRECT REVIEW**

On November 7, 1996, Petitioner was indicted on six criminal counts. (*See Febles*

1   *v. Rider, et. al.*, cv-06-1414-SRB-CRP, Doc 14, Exhibit A, R.O.A., Item 2).  These counts
2   arose from events in June and September of 1995 when Petitioner participated in two
3   separate burglaries and assaults.  (*Id*. Doc 14, Exhibit A, R.O.A., Item 2).  Petitioner was
4   eventually brought to trial on the charges arising from the September 1995 event,
5   referenced as Counts 1 and 2 in the Indictment.  On August 1, 2000, a jury found
6   Petitioner guilty on those counts.  (*Id*. Doc 14, Exhibit F).  After the trial, Petitioner pled
7   guilty to one of the charges arising from the June 1995 event.  In exchange for his plea to
8   Count 4, the Government dropped the other charges arising from that event.  On January
9   26, 2001, the trial judge sentenced Petitioner to 15 years for Count 1, 21 years for Count
10  2, to run concurrently with Count 1, and 10 years for Count 4, to run consecutively to
11  Counts 1 and 2.  (*Id*. Doc 14, Exhibit A, R.O.A., Item 2).

12          Petitioner waived his right to direct review of Count 4 by pleading guilty.  Under
13  Arizona law, however, Petitioner was entitled to file an "of right" post-conviction relief
14  appeal of Count 4.  Petitioner never filed the of-right appeal of Count Four and his
15  opportunity to file that appeal expired on April 26, 2001, 90 days after the entry of
16  judgment and sentence in Count 4.  Ariz. R. Crim. P. 32.4(a).

17          On January 30, 2001, Petitioner filed a direct appeal of Counts 1 and 2.  (*See*
18  *Febles v. Rider, et. al.*, cv-06-1414-SRB-CRP, Doc 14, Exhibit L, R.O.A., Item 212).  On
19  January 31, 2002, the Arizona Court of Appeals affirmed Petitioner's convictions and
20  sentences.  (*Id*. Doc 14, Exhibit N, R.O.A., Item 246).  Petitioner had 30 days to file a
21  Petition for Review with the Arizona Supreme Court, requesting review of the appellate
22  court's decision.  Ariz. R. Crim. P. 31.19(a).  Petitioner never requested the review and
23  his direct appeal ended on Monday, March 4, 2002, the day his right to file an appeal with
24  the Arizona Supreme Court expired.  Ariz. R. Crim. P. 1.3.

25  **B.  COLLATERAL REVIEW**

26          Petitioner filed his Notice of Post-Conviction Relief ("PCR Appeal") on February
27  22, 2002.  (*See Febles v. Rider, et. al.*, cv-06-1414-SRB-CRP, Doc 14, Exhibit O, R.O.A.,
28  Item 241).  When originally filed, this PCR Appeal focused solely on Counts 1 and 2 of

1  Petitioner's sentence. (*Id.* Doc 14, Exhibit Y). Petitioner supplemented his PCR Appeal
2  on October 17, 2002 and again on December 30, 2002. (*Id.* Doc 14, Exhibits Q, R.O.A.,
3  Item 280; T, R.O.A., Item 290). It was Petitioner's December 30, 3002 Supplement in
4  which he first argued his rights were violated under *Apprendi v. New Jersey*. 530 U.S.
5  466 (2000). Specifically, Petitioner argued against the trial court's determination that his
6  sentence for Count 4 should run consecutively to the sentences imposed for Counts 1 and
7  2. (*See Febles v. Rider, et. al.*, cv-06-1414-SRB-CRP, Doc 14, Exhibit T, R.O.A., Item
8  290). Thus, after supplementing his PCR Appeal on December 30, 2002, Petitioner's
9  PCR Appeal focused on *all* counts of his sentence.

10  On April 4, 2003, the Trial Court dismissed Petitioner's PCR Appeal. (*Id.* Doc
11  14, Exhibit V, R.O.A., Item 297). Petitioner requested the Arizona Court of Appeals
12  review the trial court's dismissal of his PCR Appeal. (*Id.* Doc 14, Exhibit Y). While his
13  Petition for Review was pending with the Arizona Court of Appeals, the United States
14  Supreme Court issued its opinion in *Blakely v. Washington*. 542 U.S. 296 (2004).
15  Because Petitioner argued *Apprendi* issues in his PCR Appeal, he requested permission to
16  supplement his Petition for Review to include argument of *Blakely* implications. (*See*
17  *Febles v. Rider, et. al.*, cv-06-1414-SRB-CRP, Doc 14, Exhibit BB). The Arizona Court
18  of Appeals stayed Petitioner's PCR Appeal and remanded his case back to the trial court,
19  directing the trial court to consider Petitioner's claim for relief based on *Blakely*. (*Id.* Doc
20  14, Exhibit CC).

21  Once again in front of the trial court, Petitioner argued his sentence on all counts
22  was unconstitutional under *Apprendi* as interpreted by *Blakely*. (*Id.* Doc 14, Exhibit DD).
23  Petitioner contended he was entitled to resentencing because *Apprendi* was decided
24  before his conviction was final and *Apprendi*, as interpreted by *Blakely*, required
25  aggravating facts be presented to a jury. The trial court disagreed with Petitioner's
26  argument and denied his Motion for Resentencing. (*Id.* Doc 14, Exhibit GG). The trial
27  court held Petitioner was properly sentenced under *Apprendi* as *Apprendi* was interpreted
28  prior to *Blakely* and that *Blakely* could not be applied retroactively. After filing a Motion

for Rehearing, which the trial court denied, Petitioner filed a Supplemental Petition for Consideration of *Apprendi-Blakely* relief with the Arizona Court of Appeals. (*Id*. Doc 14, Exhibits HH, II, JJ). The appellate court, on July 5, 2005, denied Petitioner relief on all his claims. (*Id*. Doc 14, Exhibit KK). Petitioner then requested the Arizona Supreme Court review the appellate court's decision on November 18, 2005. (*Id*. Doc 14, Exhibit LL). The Arizona Supreme Court denied review on April 20, 2006. (*Id*. Doc 14, Exhibit MM).

**C. FIRST PETITION FOR WRIT OF HABEAS CORPUS**

Petitioner filed his first Habeas Petition with this Court on May 31, 2006. (*Id*. Doc 1). In his first Habeas Petition, Petitioner argued (1) his guilty plea to Count Four was not knowing or voluntary because he was not informed of his right to have a jury determine all facts used to aggravate his sentence; (2) his sentence is unconstitutional in light of *Apprendi v. New Jersey* and *Blakey v. Washington*; and (3) his trial counsel was ineffective in failing to advise him of his right to a jury determination of aggravating facts used at sentencing. (*Id*. Doc 4). In that Habeas Petition, Petitioner contended he was only addressing Count 4 of his judgment and sentence. (*Id*. Doc 4). Petitioner's claims, however, necessitated a consideration of all three counts. This Court, like the state courts, considered Counts 1, 2, and 4 together because all three counts are part of the same judgment and sentence. This Court issued a Report and Recommendation on February 5, 2008, recommending that the District Judge, after her independent review and analysis, dismiss the Habeas Petition. (*Id*. Doc 22). The District Judge adopted the Report and Recommendation and dismissed with prejudice the Habeas Petition on March 31, 2008 as procedurally defaulted and because *Blakely* does not apply retroactively.

**D. SECOND PETITION FOR WRIT OF HABEAS CORPUS**

Petitioner filed the pending Habeas Petition with this Court on April 9, 2007.

**II.    DISCUSSION**

**A. SECOND OR SUCCESSIVE HABEAS PETITION**

Before a second or successive petition is filed in the District Court, the petitioner

- 4 -

1   shall move the Court of Appeals for an order authorizing its filing in the district court.  28
2   U.S.C. § 2244(b)(3)(A)**.**  The Court of Appeals will not issue an order authorizing a
3   second or successive petition unless petitioner meets the requirements of 28 U.S.C. §
4   2244(b).  Absent approval from the Ninth Circuit, the District Court lacks subject matter
5   jurisdiction to consider a second or successive petition.  28 U.S.C. § 2244(b)(3)(A);
6   *Gerlaugh v. Stewart*, 1999 WL 79623 (D.Ariz. February 3, 1999); *Burton v. Stewart*, 549
7   U.S. 147 (2007) (rejecting argument that the District Court has jurisdiction to consider the
8   merits of Petitioner's claims notwithstanding failure to seek permission to file a
9   successive petition because petitioner has a "legitimate excuse" for his failure to raise the
10  claims presented in his second habeas action in his first habeas action.).

11          It is established that when a first petition was decided and dismissed on the merits,
12  any later petition is "successive."  *Green v. White*, 223 F.3d 1001, 1002 n.1 (9th
13  Cir.2000), *citing Slack v. McDaniel*, 529 U.S. 473, 485-486 (2000).  A habeas petition
14  dismissed for procedural default also renders a subsequent petition "second" or
15  "successive" within the meaning of 28 U.S.C. § 2244(b)(3).  A subsequent habeas
16  petition is "second" or "successive" because the petitioner "has no further opportunity to
17  obtain a disposition on the merits of his or her claims in the state courts" and the "interest
18  underlying the dismissal of the first petition, i.e., federal-state comity, is still present."
19  *Henderson v. Lampert*, 396 F.3d 1049, 1053 (9th Cir.2005).

20          Because Petitioner's prior Habeas Petition was dismissed both on the merits and as
21  procedurally defaulted, his pending Habeas Petition is "successive" or "second."  *Green*,
22  223 F.3d at 1002 n.1.  Accordingly, *before* seeking federal habeas corpus review for a
23  second time, Petitioner must seek from the Ninth Circuit an order authorizing this Court
24  to consider the second Habeas Petition.  28 U.S.C. § 2244(b)(3)(A).

25          Petitioner argues this Habeas Petition is unrelated to his first Habeas Petition and
26  therefore is not a second or successive petition.  The AEDPA does not define the term
27  "second or successive."  The Ninth Circuit addressed this issue and stated "[t]he Supreme
28  Court, the Ninth Circuit, and our sister circuits have interpreted the concept incorporated

1    in this term of art as derivative of the abuse-of-the-writ doctrine developed in pre-
2    ADEPA cases." *Allen v. Ornoski*, 435 F.3d 946, 956 (9th Cir.2006) (internal citations
3    omitted). "An abuse of the writ occurs when a petitioner raises a habeas claim that could
4    have been raised in an earlier petition were it not for inexcusable neglect." *Allen v.*
5    *Ornoski*, 435 F.3d 946, 956 (9th Cir.2006) (internal citations omitted).

6        In Petitioner's case, he argues his first Habeas Petition addressed only Count 4 and
7    that this pending Habeas Petition addresses Counts 1 and 2. To support his position that
8    the petitions are separate, Petitioner argues Counts 1 and 2 arose from a separate incident
9    than Count 4 and that the counts were separated for trial. While these facts are true,
10   Petitioner was charged with all three counts at the same time, the cases progressed
11   together on all counts, and Petitioner was eventually sentenced on all three counts at the
12   same time. Also, the state courts and this Court considered all three counts together in
13   Petitioner's various appeals because Petitioner's arguments implicate all three counts.
14   Thus in his first Habeas Petition, Petitioner could have and did raise most of the claims
15   that he now presents in this Habeas Petition. The pending Habeas Petition is a second or
16   successive petition within the meaning of the AEDPA. This Court, therefore, lacks
17   jurisdiction over the Habeas Petition because Petitioner failed to comply with the
18   requirements of 28 U.S.C. § 2244 before seeking habeas corpus review in this Court.

19       If the District Court finds Petitioner's second Habeas Petition is not second or
20   successive within the meaning of the AEDPA, then this Court considers the timeliness,
21   procedural default, and merits of the Habeas Petition.

22   **B.  TIMELINESS OF THIS HABEAS PETITION**

23       The Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA") imposes
24   a one-year statute of limitations for state prisoners filing federal habeas petitions. 28
25   U.S.C. § 2244(d)(1). The statute of limitations begins to run from the latest of: (1) the
26   date on which the judgment became final by the conclusion of direct review or the
27   expiration of the time for seeking such review; (2) the date on which the impediment to
28   filing an application created by State action in violation of the Constitution or laws of the

1 United States is removed, if the applicant was prevented from filing by such State action;
2 (3) the date on which the constitutional right asserted was initially recognized by the
3 Supreme Court, if the right has been newly recognized by the Supreme Court and made
4 retroactively applicable to cases on collateral review; or (4) the date on which the factual
5 predicate of the claim or claims presented could have been discovered through the
6 exercise of due diligence.  28 U.S.C. § 2244(d)(1).

7 Of these four possible triggering dates for the AEDPA's statute of limitations, only
8 the first is relevant to the present action.  Petitioner does not allege he was impeded in his
9 state appeal efforts or that he was unconstitutionally impeded from timely filing the
10 present Habeas Petition.  Also, Petitioner does not allege that his Habeas Petition is
11 predicated on a newly-recognized constitutional right or newly-discovered evidence that
12 could not have been discovered earlier through the exercise of due diligence.

13 In this case, Petitioner was convicted of Counts 1 and 2 on August 1, 2000.
14 Petitioner filed a direct appeal of those counts and on January 31, 2002, the Arizona
15 Court of Appeals affirmed his convictions and sentences.  At that point, Petitioner had 30
16 days to file a Petition for Review with the Arizona Supreme Court.  Petitioner never
17 requested the review and his direct appeal ended on Monday, March 4, 2002, the day his
18 right to file an appeal with the Arizona Supreme Court expired.  The ADEPA's statute of
19 limitations was triggered the following day on March 5, 2002.

20 Absent any statutory or equitable tolling periods, Petitioner's right to file a federal
21 habeas petition expired on March 5, 2003.  *See Patterson v. Stewart*, 251 F.3d 1243, 1246
22 (9th Cir.2001) (calculating the one-year AEDPA statute of limitations using the
23 "anniversary method" of Rule 6(a) of the Federal Rules of Civil Procedure).   Petitioner
24 did not file the pending Habeas Petition until May 31, 2006, years after the one-year
25 statute of limitations expired.  Petitioner does not argue and this Court does not find that
26 he is entitled to any equitable tolling.  The Habeas Petition is untimely unless statutory
27 tolling applies and results in a tolling of the limitations period for a sufficient length of
28 time to bring the Habeas Petition within the one-year limitations period.

1   Under the AEDPA, the statute of limitations is tolled during the pendency of
2   properly filed state collateral review proceedings challenging either the pertinent
3   judgment or pertinent claim asserted in the federal habeas petition." 28 U.S.C. §
4   2244(d)(2). The AEDPA's statute of limitations began to run for Petitioner on March 5,
5   2002, the day after his right to file an appeal with the Arizona Supreme Court expired.
6   The limitations period, however, was immediately tolled because Petitioner had filed his
7   PCR Appeal on February 22, 2002. The AEDPA's limitations period was statutorily
8   tolled from the day Petitioner filed his PCR Appeal on February 22, 2002, until the day
9   the Arizona Supreme Court denied review of that Appeal on April 20, 2006. The
10  AEDPA's limitations period began to run again on April 21, 2006, the day after
11  Petitioner's collateral review concluded in the state courts. Because Petitioner filed his
12  PCR Appeal before his direct review concluded, the AEDPA's statute of limitations was
13  immediately tolled and no days expired from the one year limitations period. Thus, after
14  the conclusion of his PCR Appeal, Petitioner had the full year to file a Habeas Petition.
15  Petitioner had until April 21, 2007 to file the Habeas Petition. Petitioner filed the pending
16  Habeas Petition on April 9, 2007. The Habeas Petition is timely.

## C. PROCEDURAL DEFAULT

Federal habeas relief is available to state prisoners only after they have exhausted their claims in state court. 28 U.S.C. § 2254(b)(1), (c). The requirement that a state prisoner exhaust federal claims in state courts before bringing those claims to federal court is grounded in principles of comity, and reflects a desire to protect state courts' role in the enforcement of federal law. *Castille v. Peoples*, 489 U.S. 346, 349 (1989) (internal citations omitted). Claims are exhausted when no remedy for the claims remain available in state court. 28 U.S.C. § 2254(b)(1)(A). In cases where a petitioner has failed to fairly present a claim in state court, the federal court must consider whether any available state remedy remains. *Ortiz v. Stewart*, 149 F.3d 923, 931 (9th Cir.1998). If a federal court determines no state remedies remain, the petitioner's claim is technically exhausted but procedurally defaulted. A federal habeas court cannot address the merits of the claim in

1   those cases. *Gray v. Netherland*, 518 U.S. 152, 161-162 (1996).

2   The Arizona Rules of Criminal Procedure constrain when and how a state prisoner
3   may bring a claim under Rule 32. Under the Rules, a state prisoner cannot seek Rule 32
4   post-conviction relief in a subsequent Rule 32 appeal if the claim in that subsequent
5   appeal could have been raised in a prior Rule 32 appeal. Ariz. R. Crim. P. 32.2(a).
6   Additionally, Arizona law permits a Rule 32 appeal only within 90 days after the entry of
7   judgment and sentence or within 30 days after the issuance of the order and mandate in
8   the direct appeal. Ariz. R. Crim. P. 32.4(a). The few exceptions to these Rules are not
9   applicable to the case pending before this Court. Ariz. R. Crim. P. 32.1(d)-(h). Thus,
10  these Rules are an adequate procedural bar, which prevent a federal court from addressing
11  the merits of a habeas petition. *Poland v. Stewart*, 169 F.3d 573, 578 (9th Cir.1999).

12  In the case pending before this Court, Petitioner technically exhausted but
13  procedurally defaulted claim five (trial judge aggravated sentence for no apparent reason).
14  Petitioner failed to present this claim to the state courts. Petitioner does not point to any
15  evidence that shows he presented this claim to the state courts. After review of the
16  record, this Court has not found any evidence that this claim was presented to the state
17  courts. This is a new claim presented for the first time in this federal Habeas Petition.
18  Petitioner could not now go back to the state courts and present this claim. Ariz. R. Crim.
19  P. 32.2, 32.4. For these reasons, Petitioner's fifth claim is procedurally defaulted. This
20  Court cannot address the merits of that claim, absent a showing of cause and prejudice or
21  a fundamental miscarriage of justice.

22  When a petitioner procedurally defaults a claim in state court, a federal court will
23  not review the claim unless the petitioner shows "cause and prejudice" for the failure to
24  present the constitutional issue to the state court, or failure to hear the claim would
25  constitute a miscarriage of justice. *Sawyer v. Whitley*, 505 U.S. 333, 338-339 (1992).
26  "'Cause' is a legitimate excuse for the default, and 'prejudice' is actual harm resulting
27  from the alleged constitutional violation." *Thomas v. Lewis*, 945 F.2d 1119, 1123 (9th
28  Cir.1991) (internal citations omitted). A petitioner has the burden of proving cause and

1  prejudice. *Bonin v. Calderon*, 77 F.3d 1155, 1158 (9th Cir.1996) (citations omitted), *cert.
2  denied*, 516 U.S. 1143 (1996). When a petitioner does not prove cause and prejudice,
3  courts will consider the merits of a claim only if failure to do so would result in a
4  miscarriage of justice. *Id.* "Such injustice occurs where a constitutional violation has
5  probably resulted in the conviction of one who is actually innocent." *Id.* at 1159 (internal
6  citations omitted).

7  In the case pending before this Court, Petitioner fails to show any cause for his
8  procedural default on his fifth claim. Petitioner does not offer any evidence of prejudice
9  and the record does not support a claim of prejudice. Furthermore, dismissing
10 Petitioner's fifth claim will not result in a miscarriage of justice. Petitioner's fifth claim
11 is procedurally defaulted and should be dismissed.

12 Petitioner timely presented his first, second, third and fourth claims to the state
13 courts. The merits of those claims are now addressed.

14 **D. MERITS OF PETITIONER'S REMAINING CLAIMS**

15 Under the AEDPA, when reviewing a state criminal conviction, a federal court
16 may grant a writ of habeas corpus only if a state court proceeding "(1) resulted in a
17 decision that was contrary to, or involved an unreasonable application of, clearly
18 established Federal law, as determined by the Supreme Court of the United States; or (2)
19 resulted in a decision that was based on an unreasonable determination of the facts in
20 light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).
21 Federal courts give deference to state courts' decisions on both the legal and the factual
22 determinations. A state court decision is "contrary to" clearly established Supreme Court
23 precedent "if the state court applies a rule that contradicts the governing law set forth" in
24 Supreme Court cases or "if the state court confronts a set of facts that are materially
25 indistinguishable from" a Supreme Court decision but "nevertheless arrives at a result
26 different from" that precedent. *Williams v. Taylor*, 529 U.S. 362, 405 (2000). Under the
27 AEDPA, "state court findings of fact are presumed correct unless rebutted by clear and
28 convincing evidence." *See* 28 U.S.C. § 2254(e)(1); *Gonzalez v. Pliler*, 341 F.3d 897, 903

(9th Cir.2003). In conducting habeas review, federal courts "presum[e] that state courts know and follow the law." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002).

In his first claim, Petitioner argues his right to speedy trial was denied by the state courts. Petitioner does not present any facts in his Habeas Petition or his Reply to support this argument. Rather, he contends "[p]etitioner's speedy trial rights were definitely violated." (Doc 17). In his state court appeal, Petitioner argued his right to speedy trial was violated because Arizona allegedly knew of his imprisonment in California as early as October 1995 but did not initiate return proceedings for the charges at issue until April 1998. (Doc 16, Exhibit N). The state trial court held an evidentiary hearing on this issue and found Arizona did not know of Petitioner's incarceration in California until 1998. The trial court based its finding on the first record the prosecutor had concerning Petitioner's incarceration in California. The record was dated March 1998, not October 1995. Thus, the trial court denied Petitioner's motion to dismiss for a speedy trial right violation. On appeal, the Arizona Court of Appeals reviewed the evidentiary hearing records and concluded that trial court did not abuse its discretion. The factual determination made by the state courts was not based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. Petitioner's first claim should be denied.

In his second and third claims, Petitioner argues that counsel spent too much time contesting their fees and generally that his trial counsel and appellate counsel were ineffective. The Sixth Amendment guarantees the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). The burden of proof on Petitioner to show ineffective assistance is two-pronged. First, Petitioner must show that counsel's performance was deficient, in that counsel made errors so serious that counsel was not functioning as "counsel." *Id*. at 687. In demonstrating a deficient performance, Petitioner must show that the representation fell below an objective standard of reasonableness. *Id*. at 688. Judicial scrutiny of counsel's performance must be highly deferential, since there is a "strong presumption that counsel's performance falls within

1 the 'wide range of professional assistance.'" *Kimmelman v. Morrison*, 477 U.S. 365, 381
2 (1986) (quoting *Strickland*, 466 U.S. at 689).

3     Second, in proving ineffectiveness, Petitioner must show that counsel's deficient
4 performance prejudiced the defense. *Strickland*, 466 U.S. at 692. To prove prejudice,
5 Petitioner must show that there is a reasonable probability that, but for counsel's errors
6 and omissions, the result of the proceeding would have been different. *Id.* at 694. A
7 reasonable probability is a "probability sufficient to undermine confidence in the
8 outcome." *Id.* Mere conclusory allegations are insufficient to prove that counsel was
9 ineffective. *Shah v. United States*, 878 F.2d 1156, 1161 (9th Cir.1989).

10     Petitioner's second claim generally argues that his attorneys were ineffective
11 because they contested their fees. Petitioner does not offer any evidence to show how the
12 attorneys' discussion of fees with the courts impacted their representation of Petitioner.
13 Petitioner argued this claim to the state trial court judge who held "[t]here is no evidence
14 that the compensation issue in any way impacted counsel's representation of Defendant."
15 (Exhibit V). Petitioner's second claim arguing ineffective assistance of counsel does not
16 satisfy the *Strickland* requirements and should be denied.

17     Petitioner's third claim in the pending Habeas Petition makes a general allegation
18 of ineffective assistance of counsel. Petitioner does not offer any evidence that his
19 counsels' assistance was deficient or that any deficient performance effected the outcome
20 of his case. Petitioner has made numerous detailed claims about ineffective assistance of
21 counsel in his state PCR Appeal and in his first Habeas Petition. These claims were
22 previously addressed and denied by the courts. Petitioner's third claim arguing general
23 ineffective assistance of counsel does not satisfy the *Strickland* requirements. Petitioner's
24 third claim should be denied.

25     In his fourth claim, Petitioner argues, as he did in his first Habeas Petition, that his
26 rights were violated in light of *Apprendi v. New Jersey* and *Blakely v. Washington*. In
27 *Apprendi*, the United States Supreme Court held any fact, other than a prior conviction,
28 which increases the penalty for a crime beyond the legislatively-prescribed "statutory

1 maximum" must be submitted to a jury and proved beyond a reasonable doubt. 530 U.S.
2 at 490. Prior to *Blakely*, the federal courts interpreted *Apprendi* to mean that a judge
3 could not aggravate a sentence beyond the "statutory maximum" proscribed by the state
4 legislature. Federal circuits unanimously believed that the statutory maximum was the
5 greatest sentence by the statute of conviction, irrespective of what factfinding the court
6 conducted to impose that sentence. *Allen v. Reed*, 427 F.3d 767, 775 (10th Cir.2005),
7 *citing United States v. Price*, 400 F.3d 844, 847 (10th Cir.2005), *cert. denied*, 127 S.Ct.
8 1119 (2007).

9 Courts interpretation of *Apprendi* changed after *Blakely* was issued. In *Blakely*,
10 the United States Supreme Court clarified that the term "statutory maximum," as used in
11 *Apprendi* meant the presumptive sentence given the facts as found by the jury or admitted
12 by the defendant. *See Blakely*, 542 U.S. at 303-304; *Allen v. Reed*, 427 F.3d 767, 772
13 (10th Cir.2005) ("In other words, [after *Blakely*] the relevant 'statutory maximum' is not
14 the maximum sentence a judge may impose after finding additional facts, but the
15 maximum he may impose without any additional findings.").

16 While *Blakely* clarified the meaning of statutory maximum as applied in *Apprendi*,
17 courts have held that *Blakely* is not retroactive. Defendants sentenced in the time
18 between the Supreme Court's issuance of *Apprendi* and *Blakely* are limited to an
19 interpretation of *Apprendi* as it was understood prior to the issuance of *Blakely*. *See, e.g.*
20 *Allen v. Reed*, 427 F.3d 767, 774 (10th Cir.2005); *Brown v. Greiner*, 409 F.3d 523, 533-
21 534 (2nd Cir.2005) ("our appraisal of the reasonableness of the state court interpretations
22 of *Apprendi* may not be influenced by the Supreme Court's subsequent elucidation in
23 such cases as *Blakely v. Washington*, 542 U.S. 296 (2004), and *United States v. Booker*,
24 543 U.S. 220, *cert. denied*, 126 S.Ct. 1566 (2006).

25 In the case pending before this Court, Petitioner's convictions became final after
26 the *Apprendi* decision was issued in 2000 but prior to the date the *Blakely* decision was
27 issued in June of 2004. Therefore, the holding of *Apprendi* applies to Petitioner's
28 sentences, only as it was understood at that time, pre-*Blakely*. When Petitioner

1  committed his crimes, the statutory maximum for a dangerous class two felony was 21
2  years and for a dangerous class three felony, fifteen years. A.R.S. § 13-604(i) (Supp.
3  1995). In 2001, prior to the decision in *Blakely* and without violating the decision in
4  *Apprendi*, Petitioner could properly be sentenced to 51 years imprisonment pursuant to
5  his conviction for Counts 1 and 2 and his plea for Count 4. Petitioner received the
6  statutory maximum for Counts 1 and 2, totaling 36 years, to run concurrent. Petitioner
7  received only 10 years for his plea to Count 4, to run consecutively to the sentences for
8  Counts 1 and 2. The trial judge sentenced Petitioner within the allowable statutory
9  maximums. Petitioner is not entitled to relief from his sentences.

10  The application of *Apprendi* to Petitioner's claims was not clearly contrary to
11  federal law. In fact, the state courts followed the law as interpreted in the time between
12  *Apprendi* and *Blakely*. Therefore, Petitioner's claim should be denied.

### III.  RECOMMENDATION

14  Based on the foregoing, the Magistrate Judge recommends that the District Court,
15  after its independent review and analysis, enter an order DISMISSING the Petition for
16  Writ of Habeas Corpus.

17  Pursuant to 28 U.S.C. § 636(b), any party may serve and file written objections
18  within ten days of being served with a copy of the Report and Recommendation. If
19  objections are not timely filed, they may be deemed waived. The parties are advised that
20  any objections filed are to be identified with the following case number: cv-07-728-SRB.

21  The Clerk is directed to mail a copy of the Report and Recommendation to
22  Petitioner and counsel for Respondents.

23  DATED this 10th day of June, 2008.

*[signature]*

CHARLES R. PYLE
UNITED STATES MAGISTRATE JUDGE